Okay, our final argument for the afternoon is United States v. Rodriguez, No. 18-1606. Good afternoon, Your Honor. May it please the Court, Robert Zales, we're on behalf of the government. If I may, Your Honor, reserve three minutes for rebuttal. Thank you. I'd like to begin, if I may, answering the questions that were presented by the Court in its letters. One question was whether essentially the Sentencing Commission is coming to the rescue by getting rid of the categorical approach in the application of the Career Offender Guideline. The answer is, one answer is, not too soon. The Sentencing Commission, as the Court may be aware, currently does not have a quorum. It has two members. There are no pending nominations. The way the Sentencing Commission works under its regulations, it proposes amendments to Congress by April 30th of each year, and they go into effect on November 1st, unless there's an emergency authorization from Congress to go off of that cycle. So as we sit here right now, the best prediction is that we are at least a year away from any amendments being submitted to Congress. I think part of the question was whether those observations and some of the affirmative statements that the Commission made in its materials in the Federal Register sort of pronounced that some of the interpretations the government has offered in its brief just don't map on to what the language is. Among other things, Hobbs Act robbery does not meet the generic definition. It doesn't fit the extortion definition in the guidelines. The government has asked us to do some sort of mix and match. Isn't some of those observations that aren't asking for action, but sort of their views, undercut some of the government's position as to how we can mix and match, as you all, at least I'm calling it. There are observations by the Commission, and it's really by the of these pronouncements that come from the Sentencing Commission. I've been involved with this for many years. I'm sure your honors have seen this as well. The Commission follows a set pattern every year in which it puts out a set of questions and gets feedback. Then it promulgates a proposed amendment that itself involves questions and options. And then finally, usually around March, votes on the amendments that it's going to send to Congress at the end of April. And so one could happily look at this and read into this all sorts of conclusions, but these are not pronouncements of the Sentencing Commission. These are questions that are presented and they result in, and it's all posted publicly on the Commission's website, they result in comments from everywhere, from the government, from the defenders, from many other parties who are involved in the system who comment on it. So I don't think you can read into that a conclusion. I'll be happy to hear, to argue conclusions that favor our position that are in these materials. Most notably, this rapid effort by the Commission to address what we believe is a clear misreading of the amendment that was adopted in 2016. What about the fact that the proposed, the current proposed amendment is one that goes to not the definition of robbery, I'm sorry, but goes to not the definition of extortion, but to the definition of robbery. That is, it seems to indicate that they don't perceive a problem with an understanding of extortion that excludes injury to property. Rather, they're considering whether there needs to be something closer to a generic definition on the robbery side that would sweep in a Hobbs Act robbery. So I read it a little differently, Your Honor. If you go back to the first request for comment that the Commission made at the end of 2018, the essential request was, how do we fix this? Hobbs, we're being told by courts, Hobbs Act robbery might not be a crime of violence. How should we fix it? And there are different ways to fix it. The one that's in the current proposal is to simply take the language of the Hobbs Act and put it in the robbery definition. Another way to fix it would be to change the extortion definition. Another way would be to simply announce that the commentary as of 2016 was being misread. The Commission put forward all of those options with one goal. What it's finally going to amount to, I do feel that eventually, when they do have a quorum, that there will be a solution. I can't tell you exactly which one it will be. But what's clear is that the Commission seems intent on fixing what we believe is a clear misinterpretation of what it did in 2016, just to make sure that everybody's on the same page. Right now, the proposal, to specifically answer Your Honor's question, the proposal is just import the language of the Hobbs Act, and that takes care of it, and put it in the definition of robbery. You wanted to answer the second question about Robinson? Well, so it's related. The government's position, as the Court may be aware, is that we do not, the Department does not defend the reasoning of Robinson. Why? Because the Supreme Court has said many times that the categorical approach must be applied to an elements clause, that when Congress speaks in terms of the elements of an offense instead of the facts of an offense, that that requires a categorical approach. Except, math has said there were three justifications. One of them is a Sixth Amendment justification, doesn't seem to apply to the guidelines. One's a practical unfairness one, doesn't seem to apply when they're tried together, and one of them is the text of the of the statute, and Robinson itself is a situation which is not a statutory term prior conviction in 924C. So, why is the Department not applying our precedent or employing it? Well, speaking on behalf of my superiors, their view is that they are bound by the Supreme Court precedent applying the categorical approach. Certainly, there are excellent arguments that can be made that this should never have been applied to the sentencing guidelines. This Court did not accept those arguments starting more than 10 years ago. So, we do have precedent of this Court regularly applying the categorical approach to the guidelines. I would probably welcome the opportunity to appear before the but I don't think I can do that before the panel. And most recently, Judge Schwartz, in the not-precedential decision in Lewis, rejected the idea that the Robinson holding would apply to the guidelines in the same way that it does to 924C, based on the precedent of this Court. So, I agree, Your Honor, there are excellent arguments to be made, but as of now, the Department does not defend the reasoning that the categorical approach cannot apply to an elements clause. Now, that doesn't restrict us in our frequent criticism of the categorical approach. And, of course, we're not alone. Many judges have joined in this criticism. It is as strange a sentencing doctrine as one can imagine. But unfortunately, we have it. We have it. Right? So, I want to make sure I understand. You're not asking us to apply Robinson. So, the only way the government can prevail here is if we accept an interpretation of the sentencing guidelines as they currently exist. Exactly. Right? And I understand your argument. The only way that we can get there is through this sort of mixing and matching, and saying, well, if you push together extortion and Hobbs Act robbery in the enumerated offense clause, we get there. Because you're, as I understand the brief, you are saying you cannot rely on the elements clause as drafted because of the way Hobbs Act says persons are property, and the guidelines only talk about people. Right? That's right. Okay. So, the only way you can prevail is by pushing those two pieces together. Has any other Court accepted that? I think in the Ninth Circuit before Bankston, maybe they, there was some lip service to it, but then I think the Ninth Circuit has stepped away from even that effort. So, is there any authority that would allow us to do this mix and match? Well, two things. First, yes, the Ninth Circuit, and I believe one other circuit as well that's cited in our brief, had accepted what Your Honor calls the mix and match before this issue arose. The Ninth Circuit has not backed off on it. They've simply said, oh, we now have a new Right. So, they had to retreat from their prior views. Just with regard to this specific issue. Second, as it plays out here, really we're not mixing and matching. We're relying on the definition of extortion. The definition of extortion, which is a threat to a person or property in order to get something from the victim, perfectly fits Hobbs Act, what's called Hobbs Act robbery. But isn't the challenge, though, the definition of extortion under the guidelines only speaks of, quote, physical injury? And in order for us to accept your view, we have to say physical injury would include injury to property? Well, that's the issue. That's the exact issue before the court. And how can we do that under the guidelines? The guidelines, and I know you know them backwards and forwards, and I know your adversary does too, the guidelines use words like physical injury and bodily injury and property damage. And it's pretty clear when they're talking about something that hurts the person, something that hurts the property of that person. And I'm not sure how you can say the guideline definition or the guidelines use of the word physical injury means anything other than injury to a person. When you look at 2B3.2, you look at 5K, I think it's 2.12, you look at 2C, I mean, they all seem to distinguish these two concepts. So it varies from guideline to guideline, and it's very important in looking at each and see the distinction that's being drawn. In the context of Hobbs Act robbery, the Hobbs Act itself in section 1951 refers to physical violence to persons or property. That's the essence of the offense. And so we have to look at the context of what we're dealing with. My main answer to your Honor's question of why do we interpret physical injury this way is simply the canon against an absurd result. And this result would truly be absurd. As we make out in our briefs, the Hobbs Act is the premier statute for the last century in addressing violent interference with interstate commerce. From day one, it's been addressed at violence to persons and violence to property. And this is known to any participant in the criminal justice system. So then the Sentencing Commission in 2016 says we want to narrow the definition of does not apply to, quote, nonviolent injury, such as injury to reputation. And to do that, they use the words physical injury. So we're supposed to draw from that, that the Sentencing Commission intended after 80, 90 years of prosecution of violent extortion to exclude the number one federal statute addressing violent crime. It's dealing in the context of the career offender guideline. The career offender guideline was drafted by Congress, excuse me, with the express purpose of increasing the punishment on the most violent offenders who repeatedly commit violent or drug offenses. And so the notion here is that the Sentencing Commission decides to limit the career offender provision by taking out, by starting with, the number one violent criminal offense that's most frequently prosecuted without saying anything about that. With only... Wouldn't it have been a much simpler case if that's all that Congress wanted for them to put in a comment that said physical injury is intended to exclude injuries such as reputation, rather than changing the definition to be limited to physical injury, which is, as Judge Schwartz points out, everywhere else it appears in the guideline seems to be juxtaposed to property damage or property destruction. And I don't think you've pointed us to any other guideline where the term physical injury is, or statute, where that term is recognized to include property damage or property destruction. Well, I've pointed you to the Hobbs Act itself that talks about physical injury to property using those words. But what I'm suggesting here is that the Sentencing Commission itself is taken by surprise, and that's why we see this unusually rapid effort to make a clarification of... Can't that robbery talk about violence to property? So Hobbs Act, in the first part of the Hobbs Act, it says that you cannot engage in physical violence to persons or property through robbery or extortion, and then proceeds to define robbery and extortion. That language has been in variations of the Hobbs Act since 1934. So that is the proper focus here of what we're dealing with. But that's not physical. That's not using the term physical injury, which is the term that the Commission selected to put into this provision. I agree. It uses the term physical violence. And the debate here is what does physical mean? Is that limited to the person or property? In the context of the Hobbs Act, it's never been limited to the person. And in fact, and we lay this out at great length in our reply brief, the purpose stated over and over by members of Congress was as much to address extortionate violence to property as to persons. Counsel, your whole argument seems to depend upon assuming that the guidelines are meant to go hand in glove with the Hobbs Act. But the failure to use the term in the Hobbs Act, I think Judge Crouse's point is, really cuts against your argument that they were supposed to be so close. And then you have to bootstrap this on absurdity, which is a high bar and high doctrine. What makes this absurd? What makes it absurd is that you have the career offender provision where Congress says that people who repeatedly commit violent and drug offenses should be sentenced at or And the suggestion here is without mentioning the Hobbs Act, that the Sentencing Commission suddenly decided that the Hobbs Act, again, the main statute focused on interference with interstate commerce, is not meant to be included. But that's the whole point of the proposed amendments. I think they're recognizing like, oops, we left something out. And so by operation of the guidelines as drafted in front of us that are binding on this particular defendant's sentencing, aren't we stuck? Well, no, Your Honor, because again, and it may be a high bar, but if ever the absurdity can and were to apply, it should be here. Here's my follow up. You take the position that lenity doesn't apply here. I think your adversary would say, well, you know, you can't go off on absurdity grounds where you have to have fair warning and notice the limitation. Why do you think either lenity doesn't exist anymore or lenity is trumped by absurdity rather than the other way around? Well, the Beckles decision holds that the vagueness doctrine does not apply to the sentencing guidelines at all. And that's the reason that Beckles does not apply the Johnson decision with respect to the queer offender definition and the residual clause. The vagueness doctrine rests on exactly the same rationales as the lenity principle. I don't think so. In Peugh, the Supreme Court said that ex post facto does apply to sentencing guidelines. And one of the rationales was, you know, there's a separation of powers component to ex post facto and there's a separation of powers component to lenity, too. So why is this case more like Beckles than like Peugh? Because at bottom, in our view, the lenity principle is meant to prevent arbitrary enforcement to give notice of the law. And in Beckles, the Supreme Court very clearly at length explains that those principles are not significant in the guideline context. Isn't that also an argument you'd need to make to the en banc court? And we're in the same position as the Ninth Circuit in Edling, where we've got circuit precedent that says the rule of lenity does apply. Beckles, by its terms, doesn't speak to the rule of lenity. Aren't we bound by our precedent? We believe that Beckles is clear enough on this that it's a situation in which intervening Supreme Court precedent does overcome the earlier precedent of this court. So I do not believe that en banc review is necessary on this point. If I could just say one last point, because I know I'm over my time as far as getting back to the absurdity point. If extortion does not, as defined by the Sentencing Commission, does not apply to threats against property, which has always been part of the essence of extortion,  the defense has not identified any extortion statute anywhere that would now be a crime of violence under the sentencing guidelines. Not just Hobbs Act robbery or extortion. And so once again, we have to say, is this what the Sentencing Commission was doing when it said physical injury? That it was saying that extortion is an enumerated offense, but by the way, it's an empty set. But there are some state statutes, right, like Oregon's, that break out as different elements injury to persons versus injury to property. And that would be a way that it wouldn't knock out all extortion statutes. That would be true. I'm not familiar right now with Oregon's statute. I'm familiar with many state statutes that do not qualify. What the Sentencing Commission did accomplish through the amendment is there are many statutes, such as, for example, Hobbs Act extortion itself, not robbery, Hobbs Act extortion, that apply to reputational injury. And so they made very clear those don't qualify. And now we have to get into a debate over whether those statutes are divisible or not. But I'm not familiar with any, and I will look up Oregon, but I'm not familiar with any statutes which are divisible to the point that you would have an offense that now qualifies under this enumerated offense. And I would also say that if it's only one, that doesn't get the argument very far either, that that's what the Sentencing Commission was up to. They were trying to limit, to take out the Nardello type of case of injury to reputation. And we believe it's just not a reasonable reading at all to ascribe to the Commission these extreme results of taking out Hobbs Act robbery as a crime of violence. Okay, we'll be back on rebuttal. Thank you. Thank you very much. Good afternoon, Your Honors. Brett Schweitzer of the Defenders here for Mr. Rodriguez. If I may pick up on the last point that my colleague was addressing, I would also direct the court to, I did not do a 50 state survey. I stopped at Arizona, which is the third state alphabetically. I would point the court to Arizona felony second extortion. That's 13-1804A1-2, which prohibits as a divisible offense because it has a higher, under the Apprendi test for divisibility, has a higher punishment prescribed that punishes only future injury to the person. So we have to do our work here. The absurdity argument can't be based on bald assertions about there are no statutes anywhere. There plainly are statutes in several states. But more importantly, the absurdity doctrine that my colleague relies on to make the argument that, of course, Hobbs Act, the Commission did not intend to take Hobbs Act robbery out of the crime of violence definition, doesn't hold water either. I'm not in the Commission's mind, none of us are, but I think Judge Schwartz, you probably hit the nail on the head when you said this was an oops. And we know this is a complicated situation. The mixing, the matching, the generic, the elements, the dividing into extortion and robbery. And what happened here was the Commission very clearly narrowed extortion to include only personal bodily injury, physical injury. And that ended up sending Hobbs Act robbery out the trap door. And the normal process here is happening. The Commission comes back, this is the normal feedback loop. Guidelines are all about, you know, courts rule on what the guidelines mean. Commission takes those rulings, goes back, fixes, tweaks, nips and tucks. And that's exactly what is happening here. The Commission has come back and done that. I think we need to even reach the rule of lenity for you to prevail. I do not think you need to reach that at all, Your Honor. Because, I mean, I would just, I'll point out, I'll just tick off for you the textual reasons and then touch on briefly what would be the sort of legislative history. But the textual indications are absolutely clear. We cited blacks, common usage. We don't say my car was injured. But more importantly, the guidelines usage, as some of the panel had pointed out. I would particularly point the court to 2B3.2, which Judge Schwartz, you mentioned. That's the extortion guideline, which is titled, extortion by threat of injury or serious damage. It's the same throughout the guidelines. But then more important, or just as importantly, I would say, when we look at both the 2016 amendment cycle and now the 2018, the proposed amendment cycle, all we see is indications that this is bodily injury. In fact, when the commission promulgated the 2016 amendment, it actually interpreted this language. And it said, the proposed amendment requires the threat to be a threat of physical injury against the person. That's what was eventually passed in 2016. So the commission said exactly what they were talking about. That's at 80 Federal Register 49317. Okay, so we have that. Project of what was happening in 2016. Remember, this was triggered by Johnson. The residual clause gets eliminated. But the commission made very clear that they are recalibrating the whole crime of violence definition. In the notice, they said, should we even include property offenses at all? We want comment on that. They didn't go that far. But it is quite clear they dropped involuntary manslaughter. They dropped burglary. They added use of explosives. They retained arson. So the other... Let me ask you about that. Your adversary has a point here that arson is a crime against property. And explosives frequently, if not typically, is too. So does that indicate that there's not this person property line that you're drawing? There is in extortion. Overall, no. In the 2016 amendment cycle, the commission, as I just said, threw that out there. Should property be involved at all? Remember, in the elements clause, there's no property. It's just person, right? So they didn't go that far. They retained arson. They added explosives, which is essentially mostly a property damage type offense. And so what we can divine from this is extortion was a blunt tool. And my colleague talks a lot in his brief about chicken coops being blown up in New York in the 1940s and this and that and the other thing. Well, arsonists and bombers are still covered by the Crime of Violence definition. That's what we know from the 2016 amendment. They're still in there. So it's not a bright line as to the whole definition. But it is as to extortion. Whatever was in that request for commentary when it came to the actual guideline against the person was not carried over. And if a commission had used the phrase bodily injury, we probably all wouldn't be here today. This term physical injury, why shouldn't we step back thinking about the big picture here? Congress, in narrowing this down and authorizing the commission to act as it did, is distinguishing between violent and nonviolent offenses. And violence to property is the very terms of Hobbs Act robbery. Why shouldn't it be included in the concept of physical injury? Two things, Your Honor. When Your Honor said it didn't carry it over, I would dispute that. The language against the person that was in the notice was not duplicated in the reason for amendment. But that doesn't somehow mean that they changed the meaning. What happened in the notice was the text of the change of the actual guideline amendment never changed. They said, we're promulgating this. This is what it means. And then they promulgated exactly that, exactly what it means. And then in the reason for amendment, they rewrote it. And yes, they didn't include that. But this doesn't mean that the meaning changed. What we have is we have two indicators that the language that my colleague relies on, as opposed to nonviolent threats such as reputation, two things there. First of all, it's very clear. And my friend was taking the position in the briefing. I'm not sure if he stands by that now. But he was taking the position that the amendment only excluded blackmail. That clearly can't be the case, in other words, threats of reputation. Because of the such as. It's clearly illustrative. It is not a limiting situation. So we go to nonviolent. And the point there is, this is exactly the project that I was discussing earlier. Some property offenses are violent. And some are, the commission would consider, not violent. An extortion against, with damage to property, could be tagging, graffitying someone's storefront. Or it could be, as my colleague points out in his brief, blowing up construction equipment. That's right. But what the commission did was it drew the line. And it said, with extortion, it's a blunt tool. We're going to limit that to physical injury. And that's really, I say ordinary meaning because I think it is ordinary meaning. But it is a term of art. Sure, they could have said bodily injury. But it's perfectly clear when you look at the guidelines, the predominant language is physical injury and property damage. And the commission said physical injury. But even more important, let's go to 2018. As Your Honor, Judge Crouch, you pointed out, the proposed amendments don't touch extortion. So we've got three circuits on the books right now that say, the 2016 narrowing of extortion excludes property damage. And the commission comes back in 2018 and says, we're fine with that. No change. But we have this Hobbs Act robbery situation. We are going to propose a new definition of robbery. So in essence, if this court were to step in, sort of, in my opinion, get in front of the process here and say, no, no, no, we're going to interpret extortion in some different way, that is actually going against what the commission is trying to do. The commission on the 2018 amendment said, no, we want to keep extortion. We looked at these cases, O'Connor, Camp, Edling. We know what the law is. And we're fine with that. We're not fine with Hobbs Act robbery having slipped out the bottom in this rejiggering with the residual clause gone and everything else. So again, that's the process as it is designed to work. The, you know, the point as to, you know, I'll make one other touch point on absurdity. I do think we should step back here and take note that what we're talking about here is a crime of finals, or I'm sorry, a career offender designation. A very serious matter under the guidelines. However, there was nothing prohibiting this court from looking at this, and this was a violent crime. I'm not here to talk about this was not a violent crime. That's not the issue, of course. The issue is whether it's a statutory issue. But the court, this court, and every other court is well within its power to grant invariance, to adjust under 3553A for whatever deficiencies it may perceive in the workings of the guidelines. Here, in fact, the court did not do that. Once the career offender designation was made against the government, government asked for an upward variance and the court didn't do it. So we ought to honor that and we ought to trust that. And we, more importantly, ought not to sort of torture and twist and get ahead of the commission in order to somehow correct this perceived emergency. There is no emergency. The district court can correct it under 3553. The sentencing commission is already correcting it. If I may, just to touch on the Robinson point, I would say to the court, in addition to, we briefly noted this after we noted the government's concession. And so I did the court to this, the Third Circuit's decision in Stern, which says we don't look behind government concessions when they're the appellant. I would also point the court, since the court asked in the letter, to Wood v. Milliard. This is the Supreme Court case from 2012. As the court may recall, there was percolating amongst the circuits for a long time as to whether courts could intervene and assert a statute of limitations defense in advocate cases. And the Supreme Court very clearly drew a line between forfeiture and waiver and said it's an abusive discretion, not only for a district court, but in Wood for a circuit court to intervene when there's been an affirmative concession. And of course, that's what happened here at App 148 in the appendix. And as my colleague candidly said at the podium here, this is not the position of the department. So under Wood, I think this court doesn't have the power to reach the issue. If there are no other questions, I'll cede my time. Yep. Okay. Thank you. Thank you. Well, briefly, John, my friend Mr. Schweitzer speaks on behalf of the commission, saying things that the commission itself has not said. That reference to against the person was in the request for comments that the commission made, which again, if you look at the full set, ask questions every which way, which could be interpreted in favor of one side or the other. That language, of course, did not appear in the final version. What appears is physical injury. And as we've said in the context of the Hobbs Act and of extortion in general, physical injury by definition can include injury to property and historically always has. Similarly, he says, let's look at what they're saying in 2018. They didn't say anything in 2018, except put out a list of requests. The original request from the commission, which it has yet to act on, is essentially, how do we fix this? And if you look into the comments, I can tell you exactly what's in the government's comments that have been submitted to the commission. Proposals have been made to fix it both ways by addressing either the definition of extortion or robbery. None of that is what matters. What matters here is that the sentencing commission said, what it clearly said when it promulgated the amendment, is we are taking out, quote, nonviolent, end quote, threats, including such as injury to reputation. What extortion is addressed at, whether it's marring somebody's store or breaking their windows or blowing up the store entirely, has always been seen as violent in federal law. And that's the problem here, is that by saying nonviolent, we're being told that the sentencing commission took out the principle federal violent offense. And we ask the court to reverse that judgment of the district court. Thank you very much. Thank you. Counsel, thank you both for a well-briefed and very well-argued case. And we'll take this matter under advisement. And we will stand adjourned.